771 So.2d 1238 (2000)
Jose CAMPUZANO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-4355.
District Court of Appeal of Florida, Fourth District.
November 8, 2000.
*1240 Richard L. Jorandby, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Michael J. Neimand, Assistant Attorney General, Fort Lauderdale, for appellee.
GROSS, J.
Jose Campuzano timely appeals his November 17, 1999 conviction and sentence for possession of cocaine with intent to sell. Campuzano contends that the trial court erred by denying his motion to suppress evidence seized after he was detained and patted down by a police officer responding to an anonymous tip. Campuzano entered a nolo contendere plea and reserved his right to appeal the denial of the motion to suppress, a ruling that was dispositive of the case. Holding that the stop, pat down, and seizure met constitutional requirements, we affirm.
At about 9:00 p.m. on June 2, 1999, Officer Dominique Fusca received an anonymous call stating that Jose Campuzano would be executing a drug transaction at the Riverbridge Plaza at 11:00 p.m. that night. The caller stated that Campuzano would be driving a white, two-door 1984 Oldsmobile Cutlass with a blue vinyl top. The caller further stated that Campuzano "would have 28 grams of cocaine on him" and that he was going to meet a white female and white male to sell them the cocaine.[1] According to the caller, the "cocaine was going to be in [Campuzano's] pocket."
Officer Fusca, along with Sergeant Grosser and Agent Jordan, conducted surveillance at the Riverbridge Plaza. Right before 11:00 p.m., they observed a white, two-door 1984 Oldsmobile with a blue vinyl top circling the plaza. The vehicle backed into a parking space. Campuzano and a blonde, white female got out of the car. Officer Fusca knew Campuzano from a *1241 prior arrest. During that arrest, Campuzano fled in a car, forcing officers to jump out of the way of the car to avoid being hit.
After exiting the vehicle, Campuzano spoke to a white female and white male for forty-five seconds. Then he and the blonde woman entered a restaurant, Duffy's Draft House. Officer Fusca and Sergeant Grosser followed the couple into the restaurant and sat at the bar, where they watched Campuzano and his companion.
Shortly thereafter the white male and female with whom Campuzano had conversed in the parking lot entered the restaurant and sat down at the table with Campuzano and his companion. Officer Fusca, Sergeant Grosser, and Agent Jordan approached the table and asked Campuzano and the other people at the table to stand up. When Campuzano stood up, Officer Fusca noticed a bulge in his right pants pocket. Officer Fusca had been involved in "a couple of hundred" drug deals or drug arrests. He was concerned for his safety because it was "not uncommon that drug dealers have guns" and because of the prior incident where Campuzano had "attempted to run us over." The officers patted down Campuzano and his companions.
When Officer Fusca patted Campuzano down, he felt a hard bulge "with a powdery feel" in his right pants pocket. Based on his "training and experience," Officer Fusca thought the object felt like cocaine. When he pulled the object out of Campuzano's pocket, he was able to identify it as a plastic bag filled with cocaine. The officer then placed Campuzano under arrest. A search of the 1984 Oldsmobile uncovered more cocaine and a pill bottle filled with crack. The plastic bag retrieved from Campuzano's pocket contained 28.7 grams of cocaine.
The trial court denied the motion to suppress, finding that Officer Fusca properly relied on the anonymous call in investigating and patting down Campuzano. The order observed that the caller said that Campuzano would come to the Riverbridge Plaza in a white, two-door 1984 Oldsmobile Cutlass with a blue vinyl top carrying 28 grams of cocaine in his pants pocket and that he would meet an unknown white male and female to sell them cocaine. The judge also found that Officer Fusca justifiably patted down Campuzano and his companions based on his safety concerns arising from the prior incident with Campuzano and his experience that drug dealers commonly carry weapons.

The Stop
Campuzano first contends that Officer Fusca improperly stopped him because the anonymous tip was not sufficiently reliable to provide reasonable suspicion that Campuzano was engaged in criminal activity.
In order for the police to make an investigatory stop, there must be "`a reasonable suspicion,'" defined as "`a particularized and objective basis for suspecting the particular person stopped of criminal activity' based upon `the totality of the circumstances.'" Felton v. State, 753 So.2d 640, 642 (Fla. 4th DCA 2000) (quoting Graham v. State, 714 So.2d 1142, 1143 (Fla. 1st DCA 1998) (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed. 621 (1981))).
An anonymous tip can give rise to reasonable suspicion warranting an investigatory stop, provided that the police sufficiently corroborate the tip through independent observation. For example, in Alabama v. White, 496 U.S. 325, 327, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), an anonymous tipster informed the police that Vanessa White would be leaving an apartment at a particular time, driving a brown Plymouth station wagon with a broken right taillight to Dobey's Motel, with cocaine in her possession. The police saw White leave the apartment building, get into a brown Plymouth station wagon with a broken right taillight and drive the most direct route to Dobey's Motel. The police *1242 stopped the car just short of the motel. See id.
On these facts, the Supreme Court held that "the anonymous tip had been sufficiently corroborated to furnish reasonable suspicion that [White] was engaged in criminal activity," so that the investigative stop did not violate the Fourth Amendment. Id. at 331, 110 S.Ct. 2412. Significant to the Court's decision was the anonymous caller's "ability to predict [White's] future behavior, because it demonstrated inside informationa special familiarity with [White's] affairs." Id. at 332, 110 S.Ct. 2412. The Court explained:
The general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities.
Id.
The facts corroborated by the police in this case present no less "indicia of reliability" than those in White. Id. at 327, 110 S.Ct. 2412. The anonymous caller predicted Campuzano's whereabouts two hours after the call by specifying the time and location of the meeting. The tipster correctly identified the car Campuzano would be driving, called Campuzano by name, and identified the number, gender, and race of the people he would be meeting. Also, the caller identified the location and amount of the drugs Campuzano would be carrying.
The number of details, both given and confirmed in this case distinguish it from the facts in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), in which the Supreme Court held that an anonymous tip that described a person carrying a gun was not sufficient to justify a stop and frisk of that person.
In J.L., the anonymous caller reported that a young, black male wearing a plaid shirt and standing at a particular bus stop was carrying a gun. See 120 S.Ct. at 1377. The police went to the bus stop and found three black males, one of whom wore a plaid shirt. See id. "Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct." Id. Based solely on the match of the defendant's description with that given in the anonymous call, the police approached the defendant, frisked him, and discovered a gun. See id.
The Supreme Court ruled that the tip in J.L. "lacked the moderate indicia of reliability present in White and essential to the Court's decision in that case." J.L., 120 S.Ct. at 1379. The Court reasoned that the "anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." Id.
Here, the anonymous call was more like that in White, giving both descriptive details and predicting Campuzano's movements, than the tip at issue in J.L., which merely described the suspect's appearance and current location. See also Pinkney v. State, 666 So.2d 590, 592 (Fla. 4th DCA 1996) (stating that using an anonymous tip as the basis for an investigatory stop challenges law enforcement to corroborate detailed and specific information through police investigation).[2]

*1243 The Pat-Down

Campuzano next argues that, assuming the stop was constitutionally permissible, the pat-down was improper, because insufficient facts existed to create a reasonable fear that Campuzano and his companions were armed. Both the Florida Stop and Frisk Law and case law provide that police officers are authorized to execute a pat-down for weapons only where they have a reasonable suspicion to believe that a suspect is armed with a dangerous weapon. See § 901.151(5), Fla. Stat. (1999); State v. Webb, 398 So.2d 820, 825 (Fla.1981) (holding that although section 901.151(5) uses the term "probable cause," the legislature intended to adopt the federal standard for a stop and frisk, not a stricter standard). Moreover, the scope of the pat-down is limited to the extent necessary to protect the officer's safety. See Doctor v. State, 596 So.2d 442, 444 (Fla.1992).
In State v. Burns, 698 So.2d 1282, 1284 (Fla. 5th DCA 1997), the fifth district acknowledged that the presence of illegal drugs may create a reasonable fear that the suspect is armed where the officer's experience leads him to believe that weapons are often associated with the sale and possession of drugs.
Burns may no longer be good law in light of the following excerpt from J.L.:
Several Courts of Appeals have held it per se foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well. See, e.g., United States v. Sakyi, 160 F.3d 164, 169 (4th Cir.1998); United States v. Dean, 59 F.3d 1479, 1490 n. 20 (5th Cir.1995); United States v. Odom, 13 F.3d 949, 959 (6th Cir.1994); United States v. Martinez, 958 F.2d 217, 219 (8th Cir.1992). If police officers may properly conduct Terry[3] frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain under the above-cited decisions that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indicia of reliability critical in Adams and White, the Fourth Amendment is not so easily satisfied.
120 S.Ct. at 1380 (footnote added); see Alexander v. State, 616 So.2d 540, 542-43 (Fla. 1st DCA 1993) (stating that the "Terry requirement of reasonableness" is not met "by the sole fact that the person detained is suspected of dealing in a large quantity of drugs and large sums of money"); Hamilton v. State, 597 So.2d 417, 418 (Fla. 2nd DCA 1992) (holding that even if the police were correct in believing that the defendant was engaged in a drug transaction, such a belief did not create the specific, articulable facts required to justify a weapons pat-down).
In the present case, Officer Fusca's reasonable suspicion was based not only on his interception of a potential drug buy, but also from his own personal experience that this defendant was capable of resorting to violence to avoid detention or apprehension. Thus, this case is distinguishable from Alexander and Hamilton, where the police conducted pat-downs without any specific facts about the particular suspect, but based on their general belief that weapons are typically associated with a drug transaction. The pat-down was therefore constitutionally permissible.

The Seizure
Campuzano next argues that even if a pat-down for weapons was justified, Officer Fusca exceeded the permissible scope of a pat-down by reaching into Campuzano's pocket and retrieving the baggy of cocaine, an item which the officer did not believe was a weapon. The state claims that the officer was justified in retrieving contraband from Campuzano based on the "plain feel" exception. The *1244 state also notes that the Stop and Frisk Law allows a police officer to seize "evidence of a criminal offense" disclosed by a proper search for weapons. See § 901.151(5), Fla. Stat. (1999).
In Minnesota v. Dickerson, 508 U.S. 366, 375-376, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the Supreme Court held that, if a police officer feels something during a pat-down that is immediately identifiable as contraband, there is no additional invasion of privacy, and the retrieval of the item is proper, so long as the initial pat-down was justified by a search for weapons. The Court in Dickerson reasoned,
If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
508 U.S. at 375-76, 113 S.Ct. 2130 (footnote omitted).
Florida cases considering searches similar to that in Dickerson have required that police officers have probable cause to believe that an item felt during a pat-down is contraband before retrieval is permissible. For example, in Doctor, 596 So.2d at 445, the Florida Supreme Court indicated that "a generalized statement or mere conclusion [from the officer] that he [is] an experienced officer," and, based on that experience knew the item was contraband is not enough to justify going beyond an external pat-down and seizing items felt during a Terry frisk. See also Thomas v. State, 644 So.2d 597, 597 (Fla. 5th DCA 1994) (stating that an officer did not have probable cause to believe that a suspect possessed contraband, where the officer felt "something small" and summarily concluded based on his "training, education and experience" that it felt like a piece of cocaine).
In Cole v. State, 727 So.2d 280, 281 (Fla. 2nd DCA 1999), the second district reversed and remanded with instructions to grant a defendant's motion to suppress in a case where the officer removed what felt like a crack pipe from a defendant's pocket. The court in Cole stated that suppression was proper where the officer removed the item from the defendant's pocket during a weapons pat-down with "no more than a mere suspicion as to the identity of the object." Id. The court further held that "probable cause does not arise anytime an officer feels an object that the officer reasonably suspects to be contraband." Id.
Here, the weapons pat-down must be viewed in the context of the anonymous tip, which indicated that Campuzano was going to have 28 grams of cocaine in his pocket. By the time of the pat-down, the officer had verified the accuracy of the other information in the tip. When Officer Fusca conducted the weapons pat-down, he felt an object that was hard and had a "powdery feel," consistent with the tipster's prediction. Viewed in conjunction with the anonymous tip, the officer's detection of a hard object with a powdery feel generated probable cause to believe that he was feeling cocaine in the amount predicted by the tip.
Since probable cause was not based only on the officer's informed opinion, it was not necessary for the state to offer detailed testimony describing Officer Fusca's expertise in order to justify the seizure. Cf. Doctor, 596 So.2d at 445 (deputy testified that he had "been present during approximately 1000 arrests, and had seen or felt crack cocaine approximately 800 times"); State v. Bellamy, 723 So.2d 402, 404 (Fla. 5th DCA 1999) (court approved officer's "plain feel" identification of rock cocaine where officer explained that he had felt rock cocaine in similar instances between 200 and 300 times and was certain that the substance in the suspect's pocket was rock cocaine prior to its *1245 retrieval); see also State v. Lafond, 757 So.2d 1234, 1234 (Fla. 4th DCA 2000) (upholding a seizure under the "plain feel" exception where arresting officer testified that he identified the contraband based on over 100 different experiences handling or seeing cocaine rocks).
AFFIRMED.
KLEIN and SHAHOOD, JJ., concur.
NOTES
[1] Campuzano argues that, while the information about the weight of the cocaine is alleged in the probable cause affidavit, it was not mentioned during the evidentiary hearing on the motion to suppress. Therefore, he contends that this court cannot consider the tip's mention of the quantity of cocaine possessed by Campuzano in determining whether the anonymous tip was sufficiently detailed to justify the initial investigatory stop on the propriety of the ultimate seizure. Campuzano relies on Pittman v. State, 522 So.2d 86 (Fla. 5th DCA 1988), in which the court refused to consider a police report for the purposes of determining whether evidence had been illegally seized from a defendant.

This is not a case where the defendant was denied the evidentiary hearing required by Florida Rule of Criminal Procedure 3.190(h). Cf. Gadson v. State, 600 So.2d 1287, 1288 (Fla. 4th DCA 1992); Barker v. State, 438 So.2d 1014, 1015 (Fla. 4th DCA 1983). Courts may properly take judicial notice of the contents of the court file in a case on a motion to suppress. See State v. Hinton, 305 So.2d 804, 807 (Fla. 4th DCA 1975). The officer who swore to the truth of the probable cause affidavit was the only witness at the motion to suppress hearing. Courts use and rely on probable cause affidavits in a variety of situations, such as the taking of pleas and at first appearances. See Fla.R.Crim.P. 3.133(a)(3) (indicating that a probable cause determination may be based on a sworn complaint or affidavit). When the trial court's written order made reference to the tip's indication of the weight of the cocaine, there was no motion or other objection alerting the trial court that that fact was in dispute. Under these circumstances, we find no error in the court's reliance on the probable cause affidavit to establish one fact.
Pittman is distinguishable, since it involved a "police report found in the record on appeal" and not the probable cause affidavit sworn to by the officer who testified at an evidentiary hearing. 522 So.2d at 86.
[2] We distinguish this case from Pinkney v. State, 666 So.2d 590 (Fla. 4th DCA 1996), based on the nature of the anonymously supplied information. The tip in Pinkney identified the defendant by name and indicated that he would be moving narcotics from a described location to his home. The police saw Pinkney get into a vehicle driven by a woman with two children in the rear seat. The officers followed Pinkney to his home. The tip in Pinkney indicated that he was returning home, not an unusual act. At some point, everyone returns home. The tip was similar to the one in J.L., in that it indicated that the defendant possessed contraband. The tip in this case contained more predictive information to evaluate the tipster's credibility.
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).