790 So.2d 563 (2001)
STATE of Florida, Appellant,
v.
Kirk KELLY, Winston George Hylton, and Adolph Washington Folkes, Appellees.
No. 3D00-1599.
District Court of Appeal of Florida, Third District.
July 25, 2001.
Robert A. Butterworth, Attorney General and Douglas J. Glaid, Assistant Attorney General, for appellant.
Joel Defabio, Coral Gables; Peter D. Aiken (Ft.Lauderdale), for appellee.
Before GREEN, SORONDO, and RAMIREZ, JJ.
GREEN, J.
The State of Florida appeals an order suppressing evidence and statements obtained *564 as a result of a stop of the appellees' vehicle based upon information provided to police by an anonymous tipster. The trial court concluded that based upon the recent decision of Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), the police officers' stop of the appellees' vehicle predicated upon the anonymous tip was unjustified. We completely agree and affirm the order under review.
The facts adduced at the suppression hearing below are simple and uncontradicted. Officer Luis Pelosi of the Miami-Dade Police Department testified that he received an anonymous telephone tip that a home invasion robbery was being planned by three black males. The only information provided by the tipster was an address where three armed black males would be getting into a gray Acura with tinted windows. Pelosi received two additional calls from the same tipster, each repeating the same information. Thereafter, Pelosi notified the robbery division. At trial, Officer Pelosi admitted that the anonymous tipster did not (1) state the source of his/her information; (2) provide the names of the men or a description of their clothing; nor (3) provide the name of the victim(s) and/or the location of the intended crime.
Detective Joseph Nagy of the robbery division testified that he received the information regarding the tip from his supervisor. Based upon this tip, Detective Nagy immediately set up a police surveillance of the address provided. After a few minutes, three black men were seen exiting the home and getting into a dark-colored Acura parked in the driveway. The men did not have any unusual bulges in their clothing, nor did the police note any unlawful activity.
The detectives watched the men drive away in the Acura and followed them in unmarked cars. After they had traveled less than one-half block, the police stopped the Acura. The stop was not based upon the commission of any traffic infraction or criminal activity, but was grounded solely upon the anonymous tip. The car was searched and firearms were found. The three men were subsequently arrested for carrying concealed firearms and for conspiracy to commit an armed home invasion robbery.
The appellees filed a motion to suppress the evidence obtained as a result of the stop. Following an evidentiary hearing, the trial court granted the motion in accordance with the United States Supreme Court's decision of Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). The trial court made the following findings which were completely supported by the record evidence:
* * * *
4. The anonymous tipster provided no indication or any basis to allege or believe that this was inside information, there were no names, no addresses of the potential robbery site, no physical description or clothing [description] of the perceived assailants or perceived perpetrators.
5. There are no predictive factors in the record before this Court which would bring this case under the holding of Alabama v. White, such as a specific description of the defendants, specific time and specific hotel or location where the defendants were to be driving.
6. Therefore, the officers' stop can only be predicated upon the anonymous tip and there being no independent corroboration or proof of any criminal activity other than that anonymous tip, and the current status of the case law, this court is persuaded that defendants' Motion to Suppress should be granted.

*565 * * * *
The state filed the instant appeal and argues that this case is distinguishable from J.L. We disagree.
In J.L., like the instant case, the police received a vague anonymous tip about the possibility of future criminal activity which the police were unable to sufficiently corroborate. Acting on no more than this tip, the police approached J.L. who was wearing a plaid shirt at the specified bus stop. They frisked him and discovered a gun. Prior to that time, the officers had not seen a firearm and J.L. and made no threatening or furtive movements. The trial court granted J.L.'s motion to suppress and this court reversed. State v. J.L., 689 So.2d 1116 (Fla. 3d DCA 1997). The Florida Supreme Court quashed this court's decision,[1] and the United States Supreme Court affirmed.[2]
The United States Supreme Court found that the contents of the anonymous call had provided no predictive information and therefore left the police without any means to test the informant's knowledge and/or credibility. Since the tip lacked the moderate indicia of reliability necessary to constitutionally justify an investigative stop, the Court held that this anonymous tip, without independent police corroboration, was insufficient to justify a Terry[3] investigatory stop. Id.
Similarly, in this case, the tipster provided no predictive information such as the time and place of the proposed home invasion robbery, which would have permitted the police to test the tipster's knowledge and/or credibility. Indeed, the only information that the police were able to corroborate in this case from the tip was that three black males got into an Acura Legend at a specified address. These innocent details, without more, are insufficient to justify a Terry stop of these individuals. Indeed, with regards to innocent detail tips, the Florida Supreme Court in J.L. instructed that "the independent police investigation would have to uncover something more than just a verification of innocent details." The police "must observe additional suspicious circumstances as a result of the independent investigation." See J.L. v. State, 727 So.2d at 207 citing Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301.
The state argues that the tip in this case is more analogous to the tip contained in White and in Campuzano v. State, 771 So.2d 1238 (Fla. 4th DCA 2000). The state is wrong and its reliance upon these decisions is simply misplaced.
In White, the anonymous tipster was in a position to tell the police that a named female individual would be leaving a particular apartment at a particular time in a specified vehicle and that she would be headed for a specified destination (i.e., Dobey's Motel) carrying an ounce of cocaine in a brown attache case. The police immediately proceeded to the specified apartment building in the named complex and observed a woman leave that building and get into the described car. The police followed the vehicle as it drove along the most direct route to Dobey's Motel before effectuating a stop of the vehicle.
Not every detail of the tip in White was independently verified by the police (e.g., the name of the woman leaving the building or the precise apartment from which she left). The Court, however, attached particular significance to the tipster's ability *566 to predict White's future behavior. Specifically, the Court found that:
[t]he general public would have had no way of knowing that respondent would shortly leave the building, get in the described car, and drive the most direct route to Dobey's Motel. Because only a small number of people are generally privy to an individual's itinerary, it is reasonable for police to believe that a person with access to such information is likely to also have access to reliable information about that individual's illegal activities. When significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also that he was well informed at least well enough to justify the stop.
Id. at 332, 110 S.Ct. 2412 (emphasis added). Thus, the White Court found that the anonymous tip had been sufficiently corroborated and therefore furnished reasonable suspicion to justify an investigatory stop. White, 496 U.S. at 331, 110 S.Ct. 2412.
Notwithstanding the numerous details provided by the tipster in White, the Court dubbed the reliability of that anonymous tip to be a "close case." If White was deemed to be a close case, the case before us completely misses the mark. Here, the details provided by the tipster were scant and, as stated earlier, gave only innocent details. The innocent details provided in the tip in this case were in no way incriminating or indicative of criminal behavior that would justify police action.
Equally misplaced is the state's reliance upon the Campuzano decision. There, the police received an anonymous call specifically stating that Jose Campuzano would be executing a drug transaction at the Riverbridge Plaza at 11:00 that night. The caller further stated that Campuzano would be driving a white two-door 1984 Oldsmobile Cutlass with a blue vinyl top, that he would have 28 grams of cocaine in his pocket and that he would be meeting a white female and white male. Acting on this tip, three police officers set up a surveillance at the Riverbridge Plaza and just before 11:00 p.m. they observed a car matching the tipster's description. The police saw Campuzano, known to them from a previous arrest, exit the vehicle and speak to a white female and white male briefly. Campuzano then entered a restaurant at the plaza and was joined thereafter by the same white male and female. The officers approached the parties and asked them to stand. When Campuzano stood up, the police noticed a bulge in his right pants pocket. Concerned for their safety, one of the officers patted Campuzano down and felt a hard bulge "with a powdery feel" in his right pants pocket. The officer pulled the object out of Campuzano's pocket, which was found to be a plastic bag filled with cocaine.
In upholding the stop, the fourth district concluded that, like White, the facts of the anonymous tip were sufficiently corroborated by the police. Specifically, the court found that:
[t]he anonymous caller predicted Campuzano's whereabouts two hours after the call by specifying the time and location of the meeting. The tipster correctly identified the car Campuzano would be driving, called Campuzano by name, and identified the number, gender and race of the people he would be meeting. Also, the caller identified the location and amount of the drugs Campuzano would be carrying.
Campuzano 771 So.2d at 1242. Whereas the tipster in Campuzano provided detailed information of criminal activity that was subsequently corroborated by the police, the tipster in this case provided scant details which, for the most part, were innocent *567 in nature. Consequently, the police were unable to independently corroborate any proposed criminal activity by the appellees that would give probable cause to justify an investigatory stop. Pursuant to J.L., the trial court correctly granted the appellees' suppression motion.
Therefore, for all of the foregoing reasons, we affirm the order under review.
Affirmed.
RAMIREZ, J., concurs.
SORONDO, J. (dissenting)
On the night of July 31, 1998, Detective Luis Pelosi of the Miami-Dade Police Department received an anonymous tip from a person warning of a home invasion robbery being planned by three black males. In a series of three telephone calls, the tipster advised the police that three armed black males would be getting into a gray 4-door Acura Legend automobile with tinted windows that would be parked at 19125 NW 11th Court. The tipster further told police that they would be headed to an unknown destination to commit a home invasion robbery. The first telephone call was received by police several hours before defendants were stopped. The third and last call was received shortly before the stop of the vehicle in question. The same information was provided in all calls.
Pursuant to the tip, police established a surveillance at the indicated address and observed two vehicles parked outside the house located there. One was the car described by the tipster. The other was a pick-up truck. Less than ten minutes after their arrival, police observed three black males enter the Acura Legend and drive away. The car was stopped within one block of the place where it was originally observed by police.
As a result of the stop, defendants, the occupants of the car, were ultimately arrested. All three were charged with conspiracy to commit armed home invasion robbery and carrying a concealed firearm. Defendants Kelly and Folkes were also charged with possession of a firearm by a convicted felon.
Defendants moved to suppress all of the evidence seized as a result of the stop and subsequent search of the car. Relying primarily on the United States Supreme Court's decision in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), they argued that the anonymous tip was not sufficient to justify the stop in that it lacked sufficient predictive factors and had no independent police corroboration of criminal activity. The state sought to distinguish J.L. and argued that the facts of the present case are virtually identical to those of Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), where the United States Supreme Court held that the anonymous tip was sufficient. The trial court granted defendants' motion. The state appeals.
I begin by reviewing the two cases relied upon by the parties. In J.L., an anonymous caller advised police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a firearm. 529 U.S. at 268, 120 S.Ct. 1375. Police responded to the bus stop and found not one but three black males. One of them was wearing a plaid shirt. The officers testified that they did not see a gun when they arrived and that they were acting on nothing more than the anonymous tip. All three men were searched and a gun was seized from J.L.'s pocket. Id.
The United States Supreme Court began its analysis by noting that police suspicions did not arise from observations made by police but rather "from a call made from an unknown location by an unknown *568 caller." Id. at 270, 120 S.Ct. 1375. The Court went on to observe that
[u]nlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, see Adams v. Williams, 407 U.S. 143, 146-147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity," Alabama v. White, 496 U.S., at 329, 110 S.Ct. 2412. As we have recognized, however, there are situations in which an anonymous tip, suitably corroborated, exhibits "sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop." Id., at 327, 110 S.Ct. 2412. The question we here confront is whether the tip pointing to J.L. had those indicia of reliability.
Id. The Court concluded that the tip "lacked the moderate indicia of reliability present in White and essential to the Court's decision in that case. The anonymous call concerning J.L. provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility." Id. at 271, 120 S.Ct. 1375. The Court accordingly held that the tip was insufficient to justify the stop and subsequent pat-down search of J.L.
In White, police received "a telephone call from an anonymous person, stating that Vanessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken, that she would be going to Dobey's Motel, and that she would be in possession of about an ounce of cocaine inside a brown attache case." White, 496 U.S. at 327, 110 S.Ct. 2412. Police officers were dispatched to the location identified by the tipster and observed the described automobile. They then observed White leave the building with nothing in her hands, enter the car and drive away in the direction of Dobey's Motel. The car was stopped before it reached the motel. A search for drugs conducted with White's consent revealed the presence of a locked attache case, which, when opened with her help, was found to contain marijuana.
Acknowledging that every detail given by the tipster was not corroborated by the independent observations of the surveilling police officers,[4] the Court noted that police were able to corroborate that a woman left the building identified by the tip; that she departed the building at the approximate time predicted by the tipster and got into the specific vehicle described, and that she traveled in the direction of Dobey's Motel via the route most commonly taken to go there. Id. at 331, 110 S.Ct. 2412. The Court concluded that under "the totality of the circumstances the anonymous tip, as corroborated, exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car." Id.
I believe the facts of the present case resemble those in White more closely than those in J.L. As in White, in this case the anonymous tipster correctly identified a specific location, the number, race and gender of the individuals involved, a detailed description of the automobile the individuals would be using, and the nature of the crime they intended to commit. Unlike the tip in White, the tipster in this case was unable to tell police exactly where the suspects were heading. I do not believe the absence of this detail is fatal to the present case because the police never confirmed that the suspect in White *569 was, in fact, going to the motel identified by the tipster. The best they could say was that she had taken the road most frequently used to traverse the distance between the place she left and the motel. In this case, the tipster's ability to predict the future behavior of the suspects, in my judgment, "exhibited sufficient indicia of reliability to justify the investigatory stop of respondent's car." White, 496 U.S. at 331, 110 S.Ct. 2412.[5]See Campuzano v. State, 771 So.2d 1238 (Fla. 4th DCA 2000).
Even if the tip in this case does not rise to the level of reliability required by J.L., admittedly a close question, I nevertheless believe that the investigatory stop conducted here was lawful. In J.L., the Court stated:
The facts of this case do not require us to speculate about the circumstances under which the danger alleged in an anonymous tip might be so great as to justify a search even without a showing of reliability. We do not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm before the police can constitutionally conduct a frisk.
J.L., 529 U.S. at 273-74, 120 S.Ct. 1375. The Court acknowledges that certain scenarios exist where the danger to the public is so great that a reduced showing of reliability is appropriate. This position is consistent with the Court's previous statements that "the key principle of the Fourth Amendment is reasonableness the balancing of competing interests." Michigan v. Summers, 452 U.S. 692, 700 n. 12, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981)(quoting Dunaway v. New York, 442 U.S. 200, 219, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979)).
Although all felonies are extremely serious offenses, murder and rape are uniformly considered the most serious. Beyond these, home invasion robberies are probably the most violent and dangerous. Indeed, many home invasions end up being prosecuted with rapes and/or murders as the primary offenses. Having been warned that three armed men were planning a home invasion robbery, police were understandably reluctant to delay the apprehension of the subjects whose location and future actions were so accurately predicted by the anonymous informant.
It is difficult to imagine how much longer the police could reasonably have waited before making the stop. Had police followed the car to a particular residence and watched as defendants parked in the swale outside the house, there would still have been no discernible criminal activity. Had they watched as defendants exited their vehicles and approached the home, presumably with their firearms concealed, there would still be no observable criminal activity. Had they continued their surveillance as defendants either knocked on the door of the targeted residence in order to gain entry through deceit, or knocked the door down or broken through a window, they would have seen no criminal activity until the violence had actually begun. In short, under defendants' legal analysis, police officers could not have detained them until a potential hostage situation existed. This is simply unreasonable. Although the community can survive the failure to detain a person carrying a controlled substance, it cannot afford to allow violent home invaders the same leeway.
*570 In balancing the competing interests in this case, I conclude that the investigatory stop of these defendants was reasonable and permissible under the Fourth Amendment. Accordingly, I respectfully dissent.
NOTES
[1] J.L. v. State, 727 So.2d 204 (Fla.1998).
[2] Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).
[3] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[4] Specifically, the police in White were unable to confirm the name of the suspect or what apartment she exited when she left the building.
[5] The defense argues that the fact that the police in this case never independently observed any criminal activity, renders the stop illegal. I note that in White, the police were unable to independently corroborate any evidence of criminal activity until after the investigatory stop was made. Nevertheless, the Court upheld the legality of the stop.