790 So.2d 1246 (2001)
Christopher HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2505.
District Court of Appeal of Florida, Fifth District.
August 10, 2001.
*1247 James B. Gibson, Public Defender, and Linda L. Gaustad, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Tammy L. Jaques, Assistant Attorney General, Daytona Beach, for Appellee.
ORFINGER, R.B., J.
Christopher Harris was detained and searched during the execution of a valid search warrant directed to property located at 201 Hannibal Square, Winter Park, Florida. The property comprises a twostory building containing several separate businesses together with a parking lot. The search warrant authorized the search of one of the businesses and the surrounding curtilage, and was issued after six controlled drug buys were conducted on the property, two inside the business to be searched and four in the parking lot. The search warrant authorized the search of the premises "together with the yard and curtilage thereof, and any and all out buildings, and vehicles thereon, and any persons thereon reasonably believed to be connected with the said illegal activity...."
Harris was an occupant of a vehicle parked in the property's parking lot at the time the search warrant was executed. *1248 Officer McAfee of the Winter Park Police Department, asked Harris and the other occupants of the vehicle to get out of the car and, after they complied, then conducted a pat-down search of Harris and the others. At the suppression hearing, McAfee, an experienced narcotics officer, testified:
[Officer]: I told the defendant that I would, in fact, be just doing a cursory pat-down for both of our safeties and um, and I did. During the pat-down I felt a hard object inI think it was his front pocket.
[State Attorney]: And what did you do at that point.
[Officer]: Well, I wasn't sure. It felt likeit didn'tit didn'tit was unclear what it was but I've been in a drug unit for five years prior to this assignment and I knew enough to know that it could possibly be drugs but wasn't sure. I felt it was a canister and that's what was holding the cocaine and upon that point I did a thorough search and found more contraband.
Upon feeling a hard object in Harris' pants pocket, Officer McAfee thoroughly searched him and found that the object was a film cannister containing cocaine. After being arrested and charged with possession of cocaine, Harris pled nolo contendere to the charge, reserving his right to appeal the trial court's denial of his motion to suppress.
We agree with the trial court's conclusion that the vehicle occupied by Harris was on the curtilage of the property and that as a result, Harris could be detained during the execution of the search warrant.[1] A search warrant search founded on probable cause carries with it the limited authority to detain occupants of the premises while the search is conducted. Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). Consequently, the officers had the right to detain the occupants found on the property being searched during the execution of the search warrant in order to minimize any risk of harm to the officers or the occupants of the property. Id. See Boydell v. State, 690 So.2d 745, 746 (Fla. 5th DCA 1997); State v. Thomas, 603 So.2d 1382 (Fla. 5th DCA 1992).
Having concluded that Harris' detention was proper, we must now determine whether the officers had any legal basis to justify the search of his person. The search warrant authorized a search of persons present on the premises "reasonably believed to be connected with the said illegal activity, for the property described in [the] warrant...." In other words, Harris could be searched if there was some reasonable connection between him and the illegal activity that had allegedly occurred at the property being searched. Smalls v. State, 581 So.2d 1003, 1004 (Fla. 2d DCA 1991). The record before us contains no such evidence. To the contrary, the evidence suggests nothing more than Harris just happened to be there when the search warrant was executed. The mere presence of a visitor on premises authorized to be searched is insufficient evidence connecting him with criminal conduct *1249 to justify a search of his person. Ybarra v. Illinois, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). Alternatively, Florida law allows police officers to conduct a pat-down search for weapons of detainees if they have a reasonable suspicion to believe that the person being detained is armed. Campuzano v. State, 771 So.2d 1238, 1241 (Fla. 4th DCA 2000). See § 901.15(5), Fla. Stat. (2000); Howell v. State, 725 So.2d 429, 430 (Fla. 2d DCA 1999). No such evidence is found in the record. The pat-down of Harris was done as a matter of routine practice, not based on any reasonable suspicion.
But even if we were to conclude that Officer McAfee had a right to pat Harris down (which we do not), the evidence would still have to be suppressed. The state argues that the seizure was proper based on the plain feel doctrine established in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), which held that the police may seize contraband during a lawful pat-down if its illicit nature is "immediately apparent" because the seizure is then supported by probable cause. A police officer must have probable cause to believe that an item felt during pat-down is contraband before conducting a more thorough search to retrieve it. Campuzano, 771 So.2d at 1244. This court has previously recognized that: "[w]hile conducting the search, the officer could seize contraband only if, based on the totality of the circumstances, the officer felt something that he immediately knew was contraband...." Jordan v. State, 664 So.2d 272, 273 (Fla. 5th DCA 1995); see also Doctor v. State, 596 So.2d 442 (Fla.1992). However, probable cause does not arise any time an officer feels an object that the officer reasonably suspects to be contraband. Cole v. State, 727 So.2d 280 (Fla. 2d DCA 1999). Rather, the officer must be reasonably certain it is contraband. See State v. Bellamy, 723 So.2d 402, 404 (Fla. 5th DCA 1999). Officer McAfee's testimony fell short of this standard when he said: "it was unclear what it was but I've been in a drug unit for five years ... and I knew enough to know that it could possibly be drugs but wasn't sure. I felt it was a cannister and that's what was holding the cocaine...." Based on the foregoing, we conclude that the officer did not have any basis to pat Harris down nor do we believe that the evidence was sufficient to justify the seizure of the film cannister containing cocaine under the plain feel doctrine. The officer had nothing but a mere suspicion as to the identity of the object.
We therefore reverse the conviction for possession of cocaine and remand with instructions for the trial court to grant Harris' motion to suppress.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, C.J. and SHARP, W., J., concur.
NOTES
[1] The United States Supreme Court has yet to specifically address whether the curtilage of a commercial business is entitled to Fourth Amendment protection against warrantless searches, although it has indicated that such protection is far less than that enjoyed by homes and residences. In Dow Chemical Co. v. United States, 476 U.S. 227, 236, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986), the Court explained that a commercial business has much less expectation of privacy in its curtilage than a residence because commercial activities are not associated with the "intimate activities associated with family privacy and the home." See Ratcliff v. State, 783 So.2d 1099, 1100 (Fla. 5th DCA 2001).