698 So.2d 1282 (1997)
STATE of Florida, Appellant,
v.
Phillip Dewayne BURNS, Appellee.
No. 96-2645.
District Court of Appeal of Florida, Fifth District.
August 15, 1997.
Rehearing Denied September 17, 1997.
*1283 Robert A. Butterworth, Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellant.
J. Edwin Mills, Orlando, for Appellee.
ANTOON, Judge.
The state appeals the trial court's order suppressing cocaine seized from the defendant, Phillip Dewayne Burns. We reverse.
The defendant and a passenger were driving north on the Florida Turnpike when their car was stopped for speeding by an Orange County deputy sheriff. The deputy instructed the defendant to exit the vehicle with his driver's license; the defendant complied. However, as he exited the vehicle, the defendant informed the deputy that his driver's license was suspended. Upon inquiry by the deputy, the defendant stated that he and his passenger were traveling to Georgia. Meanwhile, the passenger upon similar inquiry from the deputy stated that they were returning from Georgia. The deputy questioned the passenger how that was possible when the vehicle was traveling north, and the passenger responded that he was coming from Florida. The deputy advised the passenger that they were in Florida, at which point the passenger stated that he did not know where they were coming from. These inconsistent stories caused the deputy to suspect that "there was potential criminal activity taking place." As a result, he requested the assistance of a K-9 unit. The K-9 unit arrived while the deputy was completing the defendant's citation for driving with a suspended license.
During a narcotics sweep of the exterior of the car, the dog alerted to the scent of narcotics. Following the alert, the deputy advised the defendant and his passenger that the dog had alerted and that, as a result, he would first pat them down for weapons and then search the vehicle. At the suppression hearing, the deputy explained that the pat-down was for officer safety:
I was thinking that the defendant possibly had a weapon on him and that if I didn't retrieve it or locate it before I put him in the back of my car, myself or other deputies who are assisting me on the scene could have possibly been injured or killed by a weapon.
He further testified that he had conducted the pat-down because, based on his training and experience, he had learned that when *1284 drugs are found in automobiles it is common practice that weapons are also present.
The pat-down of the defendant revealed a hard, solid substance in the seat of the defendant's pants. The deputy, who had been trained in the identification of narcotics, believed the substance to be packaged contraband. He testified that, in a majority of his drug-trafficking cases on the turnpike, drugs have been found on the suspect's body, particularly in the groin area. Once the deputy suspected that contraband was present, he handcuffed the defendant and removed the item. Upon removal, the deputy discovered 54 grams of powdered cocaine packaged in two condoms. This cocaine was the subject of the defendant's suppression motion.
The trial court granted the defendant's motion to suppress, stating that it was reluctant to extend the holdings of Jordan v. State, 664 So.2d 272 (Fla. 5th DCA 1995), and Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), in order to uphold the instant seizure. Specifically, the trial court concluded that the seizure was improper because the deputy knew that the object was not a weapon and the deputy was not in fear for his personal safety.
The state appeals this ruling, arguing that the trial court erred in granting the motion to suppress because the seizure of the cocaine was predicated upon a lawful pat-down search. We agree.
Florida's Stop and Frisk Law, section 901.151, Florida Statutes (1995), provides in pertinent part:
(5) Whenever any law enforcement officer authorized to detain temporarily any person ... has probable cause to believe that any person whom he has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, he may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon....
In State v. Webb, 398 So.2d 820, 825 (Fla. 1981), our supreme court explained that, although the statute uses the term "probable cause," the legislature intended to adopt the federal standard for stop and frisk and not a stricter standard. Thus, under our Stop and Frisk Law, a law enforcement officer must possess only a reasonable suspicion that the suspect is armed with a dangerous weapon in order to justify a stop and frisk. Id. at 824. The United States Supreme Court noted that reasonableness "depends `on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Maryland v. Wilson, ___ U.S. ___, ___, 117 S.Ct. 882, 885, 137 L.Ed.2d 41 (1997)(quoting Pennsylvania v. Mimms, 434 U.S. 106, 108-109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)). While there is no bright-line rule to determine whether the scope of police conduct was reasonable, our evaluation is guided by "common sense and ordinary human experience." United States v. Melendez-Garcia, 28 F.3d 1046 (10th Cir.1994)(quoting United States v. King, 990 F.2d 1552 (10th Cir.1993)).
Here, the deputy certainly possessed a reasonable belief that the defendant was armed and posed a danger to his safety so as to warrant a pat-down search. In this regard, the police dog alerted to the presence of narcotics during the course of a valid traffic stop. This alert, coupled with the deputy's experience regarding the association of weapons and drugs, eliminated the possibility that the deputy's "interference" was arbitrary. Thus, we agree with the trial court that this was a valid pat-down search under section 901.151 and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In so ruling we recognize that, without the benefit of a frisk, the deputy would have been in a precarious situation because he would not have known whether the defendant was armed. We agree with the opinion expressed by the second district in King v. State, 696 So.2d 860 (Fla. 2d DCA 1997), that law enforcement officers should not be required to take such risks. Clearly, under circumstances such as these, a defendant's right to personal security free from arbitrary interference is outweighed by the public's interest in officer safety.
However, we disagree with the trial court's conclusion that the seizure of the *1285 drugs from the seat of the defendant's pants was unlawful. In Minnesota v. Dickerson, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993), the United States Supreme Court held that an officer may seize illegal contraband discovered during a lawful Terry stop if the object's contour or mass makes the incriminating nature of the contraband immediately apparent. The Court cautioned that the pat-down search must fall within the confines of Terry; that is, the officer may not squeeze, slide, or otherwise manipulate the object, once it is clear that the object could not reasonably be a weapon. Id. at 378-79, 113 S.Ct. at 2138-39. Here, the deputy's conduct was in compliance with that standard. In this regard, the deputy specifically testified that, upon feeling the object, he immediately determined that it was cocaine. Accordingly, since the deputy detected the contraband during a lawful pat-down search, he had probable cause under the "plain feel" doctrine to reach into the defendant's pants and remove the contraband.
In closing, we agree with the trial court that the plain feel doctrine is not without constraints. In fact, this court has previously ruled that, in order for the state to rely upon the plain feel doctrine, the officer must testify that he could identify the contraband based upon his specific, personal experience as an officer. See Thomas v. State, 644 So.2d 597 (Fla. 5th DCA 1994). See also Jordan v. State, 664 So.2d 272 (Fla. 5th DCA 1995). In this case, the deputy specifically testified that he had attended a forty-hour training school offered by the Institute of Police Technology and Management in drug identification, concealment areas, and indicators on drug traffickers. He also stated that he lectures other officers on drug identification, trafficking patterns, techniques, and indicators. The defendant failed to produce any evidence challenging the deputy's training, experience, and skill with regard to identifying contraband. See State v. Fernandez, 526 So.2d 192 (Fla. 3d DCA), dis'd, 531 So.2d 1352 (Fla. 1988).
REVERSED and REMANDED.
COBB, J., concurs.
THOMPSON, J., dissents, with opinion.
THOMPSON, Judge, dissenting.
I respectfully dissent. Although I agree that a deputy does not have to put his or her life at risk when he or she detains a person, I disagree that the right to detain automatically carries with it the right to search. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Florida's Stop and Frisk law have a two-tiered approach: the right to detain and question for less than probable cause if the officer has a reasonable suspicion of criminal activity; and the right to conduct a pat-down if the officer reasonably believes the detainee is armed and dangerous. If there is no reason to believe that the defendant is armed, then there can be no reason for a pat-down search. Howard v. State, 623 So.2d 1240 (Fla. 2d DCA 1993) (holding that observing one man giving another money and receiving something in return during a drug sale surveillance did not provide probable cause to search detainee for weapons). Without additional information of some type of physical threat or potential harm to the investigating officer or observation of a bulge which may be a weapon, a lawful detention to investigate suspected drug possession is not a basis for a pat-down, even if the officer testifies that the pat-down was for the officer's safety. McNeil v. State, 656 So.2d 1320 (Fla. 5th DCA 1995); Hamilton v. State, 597 So.2d 417, 418 (Fla. 2d DCA 1992); Schnick v. State, 362 So.2d 423 (Fla. 4th DCA 1978) (temporary detention does not authorize a search "incident to detention"). Accordingly, I would hold the cocaine found and seized was the result of an unlawful search and was properly suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). I disagree that one can assume that a drug dog alert and an officer's experience provides a reasonable belief that a detainee is armed.
A law enforcement officer is allowed to conduct a protective frisk of a person he or she has detained if the officer reasonably believes or suspects that the detainee is armed. Terry, 392 U.S. at 27, 88 S.Ct. at 1883. Florida's Stop and Frisk law, section *1286 901.151(5), Florida Statutes (1995), permits a weapons frisk upon "probable cause to believe" that a suspect is armed. The Florida Supreme Court has explained that "probable cause" as used in the statute is not the same as probable cause necessary to arrest an individual or to support a search warrant. State v. Webb, 398 So.2d 820, 824-25 (Fla. 1981). Nonetheless, both Terry and section 901.151 suggest that a pat-down for weapons requires something more than the well-founded suspicion of criminal activity justifying the detention. See Stalling v. State, 678 So.2d 843, 845 (Fla. 1st DCA 1996) (under Terry and section 901.151, more than reasonable suspicion of criminal activity is required before officer may conduct pat-down searches); Hamilton (officer's knowledge that cocaine dealers usually carry weapons insufficient by itself to support a pat-down for weapons). Cf. Poole v. State, 639 So.2d 96 (Fla. 5th DCA) (officers' observation of a bulge in suspect's pocket justified frisk), rev. denied, 649 So.2d 234 (Fla.1994); State v. Hunter, 615 So.2d 727 (Fla. 5th DCA) (reasonable suspicion of violent crime justifies patdown), rev. denied, 626 So.2d 205 (Fla. 1993).
This court holds that "the deputy certainly possessed a reasonable belief that the defendant [Burns] was armed and posed a danger to his safety to warrant a pat-down search." Deputy Mankewich's testimony refutes this conclusion. Burns waited with Deputy Mankewich for 18 minutes until Deputy Vidler arrived with the drug dog. Deputy Mankewich testified that after he learned and verified that Burns' license was suspended, he could have arrested him for the criminal violation of driving with a suspended license, but he had decided not to arrest. Instead, he decided to issue Burns a court date to appear and to release him at the scene. Mankewich also testified that he observed no bulges or weapons as Burns stood next to him while he was issuing the citation. After the drug dog alerted, Makewich used the alert as his only reason for searching Burns and his passenger. I say his only reason because all other facts remained the same. The officer's situation did not become more precarious. At this point, however, no drugs had been found in the car, Burns was not under arrest, and he had not give permission for the search.[1]
The King case, which is relied on by the majority to support the search, can be distinguished. In King, the police approached a man who was standing in the middle of the street acting erratically. At first, he did not appear to hear the officers when they spoke with him. Eventually, he turned to the officers and reached behind his back. When he was ordered to stop, he did not and he was grabbed by the officers. They also seized crack and a crack pipe. The second district concluded that the man's behavior provided the required founded suspicion to stop him. Id. Those are not the facts here. Deputy Mankewich observed Burns for 18 minutes and nothing in his behavior caused Mankewich any concern for his safety. Burns complied with Deputy Mankewich's every request or order.
Deputy Mankewich's invocation of officer safety was a ruse to violate Burns' Fourth Amendment rights. Courts are often required to balance the rights of officers, their safety, and the rights of citizens (to be free from illegal searches). In this case, we go too far. As stated in Revels v. State, 666 So.2d 213 (Fla. 2d DCA 1995):
There are some citizens who fear that the Fourth Amendment has become a victim in the war against drugs.... [W]e emphasize that society's legitimate fear of crack cocaine and the ease with which small quantities of this drug can be concealed are not valid reasons to dilute the Fourth Amendment probable cause standard.
Id. at 217. Nor should the invocation of officer safety be elevated above a citizen's right to be free of illegal searches.
NOTES
[1] Although the dog alerted on the car, there is no evidence in the record that drugs were seized from the car. The information only charged Burns with possession of cocaine found on his person.