905 So.2d 963 (2005)
Michael DEWBERRY, Appellant,
v.
STATE of Florida, Appellee.
No. 5D04-871.
District Court of Appeal of Florida, Fifth District.
June 24, 2005.
*964 James S. Purdy, Public Defender, and Thomas J. Lukashow, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Timothy D. Wilson, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Michael Dewberry appeals the order denying his motion to suppress a firearm that ultimately resulted in his plea of nolo *965 contendere to the charge of possession of a firearm by a convicted felon. Dewberry reserved his right to appeal the denial of his motion to suppress, and the State agreed the issue was dispositive. The issue that we are called upon to resolve is whether the officer who conducted the pat-down search of Dewberry had probable cause to search Dewberry based on section 901.151(5), Florida Statutes (2003).
A police officer stopped the vehicle in which Dewberry was a passenger because the driver was driving erratically while Dewberry and another passenger were leaning out of the windows. The location of the stop was in a high crime and drug area. The officer called for back-up to assist with the stop, and when the back-up officer arrived, the officer who made the stop informed the back-up officer that the two passengers were jumping around in the car erratically and leaning or ducking down. The back-up officer had Dewberry, who was located in the front passenger seat, exit the vehicle. Fearing for his safety and believing that the passengers might be armed, the back-up officer conducted a pat-down search of Dewberry, which led to the discovery of a firearm in Dewberry's pocket and to Dewberry's arrest. The other passenger was also removed from the vehicle by a third officer and searched. The validity of that search is not an issue before us.
After the search and arrest, the officer who made the stop informed the back-up officer of more facts relating to the conduct of the passengers. The information revealed that while one of the passengers was jumping around, Dewberry had been ducking down and possibly reaching underneath the passenger seat of the vehicle as if to place or retrieve something from under the seat. The officer who conducted the pat-down search of Dewberry stated in his report that the passengers were "jumping up and down inside the car and ducking down, making furtive movements."
Dewberry filed a motion to suppress the firearm, contending that the officer who conducted the search did not have probable cause to search him. The trial court denied the motion, finding that the officer did have a reasonable suspicion that the occupants of the vehicle might be armed based on the facts and circumstances. In support of that ruling, the State contends that the collective knowledge and observations of the officer who stopped the vehicle and the officer who conducted the search are sufficient to support the finding that the officer had a reasonable suspicion that the occupant was armed.
In Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002), we explained the standard of review that we must apply to review a ruling on a motion to suppress:
Mixed questions of law and fact are often involved in appellate review of a trial court's ruling on a motion to suppress. State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001). The standard of review to be applied to the factual findings of the trial court is whether competent, substantial evidence supports the findings. See Hines v. State, 737 So.2d 1182 (Fla. 1st DCA 1999). In applying that standard to the facts, this court must construe all the evidence, and reasonable inferences therefrom, in a manner most favorable to upholding the trial court's decision. See Kindle, 782 So.2d at 973 (citing San Martin v. State, 717 So.2d 462, 469 (Fla.1998), cert. denied, 526 U.S. 1071, 119 S.Ct. 1468, 143 L.Ed.2d 553 (1999)). The trial court's application of the law to the facts, however, is reviewed de novo. Connor v. State, 803 So.2d 598 (Fla.2001); McMaster [v. State, 780 So.2d 1026 (Fla. 5th DCA 2001)].
*966 Young, 803 So.2d at 882. Application of this standard leads us to conclude that the State is correct, and we will now endeavor to explain why.
We begin our analysis by noting that the validity of the stop in the instant case is not contested by Dewberry and is not an issue for us to resolve.[1] However, a valid stop of an automobile to issue the driver a traffic citation does not necessarily validate a subsequent pat-down search of the occupants for weapons. Hatcher v. State, 834 So.2d 314 (Fla. 5th DCA 2003); see also R.R. v. State, 715 So.2d 1062 (Fla. 5th DCA 1998). The Florida Stop and Frisk Law allows an officer, who has validly stopped an individual, to search the individual only if the officer has probable cause to believe that the individual is armed with a dangerous weapon and poses a threat to the officer or any other person. § 901.151(5), Fla. Stat. (2003). The meaning of "probable cause" in this statute is not the same as the stricter "probable cause" standard to justify a search warrant or an arrest. See State v. Burns, 698 So.2d 1282 (Fla. 5th DCA 1997). As used in section 901.151(5), "probable cause" means reasonable belief or suspicion. State v. Webb, 398 So.2d 820 (Fla.1981) (stating that the probable cause standard adopted in section 901.151(5) means reasonable suspicion); Sutton v. State, 698 So.2d 1321 (Fla. 2d DCA 1997); Burns; see also Harvey v. State, 703 So.2d 1113, 1114 n. 2 (Fla. 1st DCA 1997). Hence, a police officer must establish that he or she had a reasonable suspicion that the individual was armed with a weapon in order to justify a pat-down search during a vehicle stop. In order to determine whether the officer did have a reasonable suspicion, we must consider the totality of the circumstances as viewed by an experienced police officer. See Taylor v. State, 855 So.2d 1 (Fla.2003), cert. denied, 541 U.S. 905, 124 S.Ct. 1605, 158 L.Ed.2d 248 (2004); Enich v. State, 838 So.2d 1216 (Fla. 3d DCA 2003).
Furtive movements may be sufficient to establish reasonable suspicion that an individual has a weapon and thus justify a pat-down search. See Lightbourne v. State, 438 So.2d 380 (Fla.1983) (holding that suspicious or furtive movement can justify pat-down search), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984); Brown v. State, 863 So.2d 459, 461 (Fla. 5th DCA 2004) ("Furtive movements may give rise to a reasonable suspicion that someone is armed and dangerous."); C.G. v. State, 689 So.2d 1246 (Fla. 4th DCA 1997); State v. Kinnane, 689 So.2d 1088 (Fla. 2d DCA 1996); State v. Brown, 395 So.2d 1202 (Fla. 3d DCA), review denied, 407 So.2d 1102 (Fla.1981); see also State v. Dilyerd, 467 So.2d 301, 302 (Fla. 1985) (holding the search of a car was justified where the passenger made furtive movement reasonably appearing to be an attempt to conceal a weapon "when the passenger leaned forward and appeared to do something with his hands on the floorboard of the car.").
In Brown, for example, the Third District held that "the furtive hand movements of both defendants under the car seat, during the subsequent police investigation after the stop, constituted articulable suspicion that the defendants were armed and dangerous, which, in turn, justified the police in searching under the car seat and seizing two guns thereunder after the police had validly ordered both *967 defendants out of the car...." Brown, 395 So.2d at 1203. This court, in its unrelated Brown decision, held that when a vehicle was stopped to issue a traffic citation and the officer observed the passenger "fidgeting as though he were trying to conceal something," the officer had a reasonable suspicion that the passenger may be armed with a weapon and the frisk of the passenger was valid. Brown, 863 So.2d at 460. In Kinnane, the court held that a reasonable suspicion to search for weapons existed when "[t]he officers stopped the car, and as they approached it, they observed the female passenger bending down, making `furtive movements' towards the floorboard." Kinnane, 689 So.2d at 1088. The court in C.G. cited the furtive movements in the Third District's decision in Brown and concluded that "the furtive movements combined with the appearance of placing something in the shoe was likewise sufficient here." C.G., 689 So.2d at 1248.
After examining the totality of the circumstances, established by the testimony presented to the trial court, and considering the standard of review we must apply and the cases discussed, we conclude that the furtive movements of the passengers in the vehicle after it was stopped may be sufficient to establish a reasonable suspicion that the passengers were armed and dangerous. However, because it was the officer that made the stop, not the officer that actually conducted the search, who observed all of the conduct of the passengers that formed the basis of the reasonable suspicion for the pat-down search, the fellow officer rule must be applied to determine whether the search was justified.
The fellow officer rule, sometimes referred to as the collective knowledge doctrine, allows the collective knowledge of police investigating a crime to be imputed to each member of the investigation. The reach of this doctrine has been extended to searches as well as arrests. State v. Peterson, 739 So.2d 561, 567 (Fla.1999) ("We agree with the reasoning of these courts and find that the `fellow officer' rule applies to searches as well as arrests."), cert. denied, 531 U.S. 831, 121 S.Ct. 85, 148 L.Ed.2d 46 (2000); Voorhees v. State, 699 So.2d 602, 609 (Fla.1997) ("The fellow officer rule allows an arresting officer to assume probable cause to arrest a suspect from information supplied by other officers."); Johnson v. State, 660 So.2d 648 (Fla.1995), cert. denied, 517 U.S. 1159, 116 S.Ct. 1550, 134 L.Ed.2d 653 (1996); see also State v. Maynard, 783 So.2d 226 (Fla. 2001). The fellow officer rule has been applied to pat-down searches for weapons. Smith v. State, 719 So.2d 1018, 1022-23 (Fla. 3d DCA 1998) ("[W]e need not decide whether Colangelo himself had a reasonable suspicion that Smith was carrying a weapon because we find that by application of the `fellow officer' rule, the pat down can be justified.... Based on the collective knowledge of the officers working here as a team, probable cause existed to conduct a pat down of Smith.").
Dewberry argues that at the time of the search, the officer who initiated the stop did not communicate all of the pertinent information regarding the actions of the passengers to the officer who conducted the search until after the arrest and did not specifically state that the passengers were making "furtive movements." Therefore, Dewberry contends that the officer who conducted the search did not have a reasonable suspicion that Dewberry had a weapon at the time the search was conducted. We reject this argument. The fellow officer rule provides that we must consider the collective information of all of the officers involved and that the officer who actually conducted the search does not necessarily have to be informed of all *968 of the pertinent information as long as the collective information of all of the officers establishes a reasonable suspicion that the individual had weapons and presented a danger to the officers. Johnson, 660 So.2d at 657 ("The issue here is whether an officer who himself lacks any personal knowledge to establish probable cause, who has not been directed to effect an arrest, and who does not know a valid warrant has been issued nevertheless can lawfully arrest a suspect. In broad terms, the collective knowledge of police investigating a crime is imputed to each member under a rule of law often called the `fellow officer rule' or `collective knowledge doctrine.'") (footnote omitted); Smith; State v. Sams, 676 So.2d 1045 (Fla. 5th DCA 1996).
Moreover, when applying the fellow officer rule, there is no requirement that the officers with knowledge of the facts establishing probable cause exchange information among themselves or with other officers with "magic words" or exact terminology. Sams, 676 So.2d at 1046 ("[T]here is no hyper-technical requirement that certain `magic words' be used by one officer with knowledge of facts supporting probable cause when instructing another officer who ultimately carries out the direction.") (citing Carroll v. State, 497 So.2d 253, 260 (Fla. 3d DCA 1985), review denied, 511 So.2d 297 (Fla.1987); see also A.J.M. v. State, 746 So.2d 1222, 1224 (Fla. 3d DCA 1999)) ("Although the officer did not use the frequently utilized magic word, "bulge," the officer clearly articulated the specific matter that caused him to become concerned for his, and his partner's, safety. At that point, the officer conducted a pat-down, or frisk, of defendant at the point where defendant's shirt did not meet the contour of his body. In doing so, the officer discovered a firearm tucked in the juvenile's waistband.") (citations omitted). Here, the combined information of both officers was sufficient to establish a reasonable suspicion that the passengers had weapons, or were attempting to conceal weapons, regardless of the fact that the term "furtive movements" was not used by the officer who initiated the stop when he informed the other officer of the passengers' conduct.
Accordingly, we affirm the order denying the motion to suppress.
AFFIRMED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] The police may validly stop a vehicle to issue a citation for the commission of a traffic infraction. See Hatcher v. State, 834 So.2d 314 (Fla. 5th DCA 2003). In this circumstance, the officer may be justified in asking the driver or passenger to exit the vehicle for officer safety. Id.; see also Moore v. State, 874 So.2d 42 (Fla. 2d DCA 2004).