ORFINGER, J.
Christopher C. Leach appeals an order denying his dispositive motion to suppress following his nolo contendere plea to trafficking in, and possession of various controlled substances. The issue we must resolve is whether the police officer who conducted a pat-down of Mr. Leach had a legal basis to do so. We conclude the pat-down, which led to the discovery of the drugs, was lawful, and that the trial court properly denied the motion to suppress.
Officer Jason Junnier, a K-9 handler and patrol officer with the Winter Springs Police Department, pulled over a vehicle driven by Mr. Leach for speeding. As Officer Junnier approached the vehicle, he noticed a lot of movement in the rear of the car. However, as the windows were heavily tinted, he was not certain whether Mr. Leach was moving around the vehicle. He also observed that all four occupants appeared uneasy. After checking Mr. Leach’s driver’s license, Officer Junnier called for backup. When Officer Ryan Vonbargen arrived at the scene several minutes later, he took over writing Mr. Leach a warning citation. Officer Junnier then had Mr. Leach and his three passengers exit the car while he used his K-9 to do a narcotics sniff of the vehicle. The dog alerted to the presence of drugs on the driver’s door handle and the front passenger door handle.
Before searching the car, Officer Junnier conducted a pat-down of Mr. Leach and his three passengers. Officer Junnier testified that he felt the need to do a pat-down of the occupants for the officers’ safety, as there were four occupants of the vehicle and only two officers. He further testified that in his experience, there are often weapons involved in narcotics arrests. While patting down Mr. Leach, Officer Junnier felt a large, hard edged object in the area of Mr. Leach’s right thigh that he believed might be a weapon. When he removed the object, he discovered it to.be a bag containing cannabis, a large amount of pills, a digital scale, and plastic baggies. He subsequently searched the vehicle.
The trial court issued an order denying Mr. Leach’s motion to suppress, concluding:
[T]he Defendant argues that the search of the Defendant’s person is illegal since the police dog alerted only on the car and the Defendant was not inside the car at the time. The Defendant relies on Bryant v. State, 779 So.2d 464 (Fla. 2d DCA 2000), to support his position. In Bryant, the Second District Court of Appeal expressly stated that an alert on a vehicle, standing alone, does not give a law enforcement officer probable cause to search a person outside the ear. However, in State v. Burns, 698 So.2d 1282 (Fla. 5th DCA 1997), the Fifth District held that a positive alert from a narcotics dog coupled with an officer’s experience in the association between *719 drugs and weapons legally justifies a pat-down search.
In the instant case, Officer Junnier testified that, in his experience, persons carrying drugs in automobiles also may carry weapons. Additionally, because of the number of passengers in the Defendant’s car, Officer Junnier testified the pat-down was done for officer safety concerns. The Court accepts Officer Junnier and [Vjonbargan’s testimony as credible. Therefore, Officer Junnier possessed a reasonable belief or suspicion that the Defendant was armed with a dangerous weapon and posed a danger to his safety and the safety of Officer [Vjonbargan so as to warrant a pat-down search of the Defendant prior to searching the Defendant’s car. The police dog alerted to the presence of narcotics during the course of a valid traffic stop. This alert, coupled with Officer Junnier’s experience regarding the association of weapons and drugs, leads the court to conclude that a valid pat-down search of the Defendant occurred in this case and that the seizure of drugs was lawful. Under the circumstances in this case, the Defendant’s right to personal security free from arbitrary interference by law enforcement officers is outweighed by the public’s interest in officer safety. State v. Burns, supra; Maryland v. Wilson, 519 U.S. 408 [117 S.Ct. 882, 137 L.Ed.2d 41] (1997); Pennsylvania v. Mimms, 434 U.S. 106 [98 S.Ct. 330, 54 L.Ed.2d 331] (19[7]7).
Mr. Leach subsequently pled no contest to all three counts, was adjudicated guilty, and sentenced to three years in prison. This appeal followed.
Appellate review of a trial court’s denial of a motion to suppress presents mixed questions of law and fact. State v. Kindle, 782 So.2d 971, 973 (Fla. 5th DCA 2001). A trial court’s factual findings are reviewed to determine if they are supported by competent, substantial evidence. Young v. State, 803 So.2d 880, 882 (Fla. 5th DCA 2002). “A trial court’s ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court’s ruling.” Doorbal v. State, 837 So.2d 940, 952 (Fla.2003) (quoting Terry v. State, 668 So.2d 954, 958 (Fla.1996)). However, the trial court’s application of law to the facts is subject to de novo review. Connor v. State, 803 So.2d 598, 608 (Fla.2001).
Mr. Leach argues on appeal that the trial court erred in denying his motion to suppress because Officer Junnier did not have probable cause to conduct a pat-down search under section 901.151(5), Florida Statutes (2005),[1] the Florida Stop and Frisk Law. The Florida Stop and Frisk Law “allows an officer, who has validly stopped an individual/[2]-[1] to search the individual only if the officer has probable cause to believe that the individual is *720 armed with a dangerous weapon and poses a threat to the officer or any other person.” Dewberry v. State, 905 So.2d 963, 966 (Fla. 5th DCA 2005). The “probable cause” requirement in the Florida Stop and Frisk Law refers to the federal stop and frisk standard and not the stricter probable cause standard for arrests and search warrants. State v. Webb, 398 So.2d 820, 824-25 (Fla.1981). Thus, there must only be an articulable reasonable belief or suspicion that the individual is armed and poses a threat to the officer. Id. at 825. To determine the reasonableness of a police officer’s suspicion, the trial court “must consider the totality of the circumstances as viewed by an experienced police officer.” Dewberry, 905 So.2d at 966 (citing Taylor v. State, 855 So.2d 1 (Fla.2003); Enich v. State, 888 So.2d 1216 (Fla. 3d DCA 2003)). Reasonableness also depends on “ ‘a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers’” and is guided by “ ‘common sense and ordinary human experience.’ ” State v. Burns, 698 So.2d 1282, 1284 (Fla. 5th DCA 1997) (quoting Maryland v. Wilson, 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); United States v. Melendez-Garcia, 28 F.3d 1046 (10th Cir.1994)).
This Court dealt with a similar set of facts in Bums, when, as here, the defendant’s car was pulled over for speeding. After learning that the defendant’s driver’s license was suspended and receiving an improbable story from the passenger about where they were traveling, the sheriffs deputy, who had pulled the car over, ordered a K-9 sniff of the car. During a sweep of the car’s exterior, the dog alerted to the scent of narcotics. The deputy informed the defendant and the passenger that he was going to pat them down for weapons before searching the vehicle. During a pat-down of the defendant, the deputy discovered a substantial amount of cocaine. At the hearing on the defendant’s motion to suppress, the deputy testified that he conducted the pat-down to protect himself and the other deputies on the scene, and because, based on his training and experience, he had learned that when drugs are found in vehicles, weapons are often also present. The trial court granted the motion to suppress. This Court reversed, concluding that the deputy’s suspicion that the defendant was armed was reasonable and not arbitrary in light of the police dog’s alert and the deputy’s experience regarding the association of weapons and drugs. Id. at 1284. We wrote:
In so ruling we recognize that, without the benefit of a frisk, the deputy would have been in a precarious situation because he would not have known whether the defendant was armed. We agree with the opinion expressed by the second district in King v. State, 696 So.2d 860 (Fla. 2d DCA 1997), that law enforcement officers should not be required to take such risks. Clearly, under circumstances such as these, a defendant’s right to personal security free from arbitrary interference is outweighed by the public’s interest in officer safety.

Id.

Mr. Leach correctly observes that in Campuzano v. State, 771 So.2d 1238 (Fla. 4th DCA 2000), the fourth district court questioned Burns’s continued viability in light of the United States Supreme Court’s decision in Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). In J.L., the Supreme Court held that an anonymous tip about a person carrying a gun was, without more, insufficient to justify a police officer’s stop and frisk of that person. In questioning Burns’s continued viability, Campuzano points to the Supreme Court’s statement in J.L.:
*721 Several Courts of Appeals have held it per se foreseeable for people carrying significant amounts of illegal drugs to be carrying guns as well. See, e.g., United States v. Sakyi, 160 F.3d 164, 169 (4th Cir.1998); United States v. Dean, 59 F.3d 1479, 1490 n. 20 (5th Cir.1995); United States v. Odom, 13 F.3d 949, 959 (6th Cir.1994); United States v. Martinez, 958 F.2d 217, 219 (8th Cir.1992). If police officers may properly conduct Terry frisks on the basis of bare-boned tips about guns, it would be reasonable to maintain under the above-cited decisions that the police should similarly have discretion to frisk based on bare-boned tips about narcotics. As we clarified when we made indicia of reliability critical in Adams and [Alabama v.] White, [496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) ] the Fourth Amendment is not so easily satisfied.
Campuzano, 771 So.2d at 1243 (quoting J.L., 529 U.S. at 273, 120 S.Ct. 1375) (added internal footnote omitted).
Our opinion in Burns was predicated on a long line of federal cases, well illustrated by United States v. Sakyi, 160 F.3d 164 (4th Cir.1998), one of the cases mentioned in J.L. In Sakyi, the court held that:
[W]hen drugs are suspected in a vehicle and the suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect. They are in the restricted space of the vehicle presumably by choice and presumably on a common mission. Furthermore, as we previously noted, guns often accompany drugs. See [U.S. v.] Stanfield, 109 F.3d [976] at 984 [ (4th Cir.1997) ]; United States v. Perrin, 45 F.3d 869, 873 (4th Cir.1995) (noting that “it is certainly reasonable for an officer to believe that a person engaged in the selling of crack cocaine may be carrying a weapon for protection.”) In the absence of ameliorating factors, the risk the danger to an officer from any occupant of a vehicle he has stopped, when the presence of drugs is reasonably suspected, but probable cause for arrest does not exist, is readily apparent. Accordingly, we hold that in connection with a lawful traffic stop of an automobile, when the officer has a reasonable suspicion that illegal drugs are in the vehicle, the officer may, in the absence of factors allaying his safety concerns, order the occupants out of the vehicle and pat them down briefly for weapons to ensure the officer’s safety and the safety of others.
Id. at 169. Sakyi’s viability was reaffirmed by the fourth circuit most recently in United States v. Oriach, 222 Fed.Appx. 312, No. 05-5051, 2007 WL 805979 (4th Cir. Mar. 14, 2007). We believe Bums is still viable as well.
J.L. does not expressly overrule Sakyi or other cases with similar holdings such as Bums. To the contrary, at least the Fourth Circuit Court of Appeals believes Sakyi and the cases on which it relies, and which form the foundation of Bums, are still viable. We agree with that assessment and believe J.L. is distinguishable on its facts. Most significantly, J.L. dealt with the authority of an officer to conduct a pat-down search after receiving an anonymous, uncorroborated tip. J.L. also held that “the requirement that an anonymous tip bear standard indicia of reliability in order to justify a stop in no way diminishes a police officer’s prerogative, in accord with Terry, to conduct a protective search of a person who has already been legitimately stopped.” J.L., 529 U.S. at 274, 120 S.Ct. 1375.
In this case, there was a lawful traffic stop, an alert by a drug dog at the location in the car where Mr. Leach was sitting, *722 four uneasy occupants of the vehicle, at least some of whom had been moving around in an unusual fashion before stepping out of the car, an officer whose experience and training taught him that weapons and drugs are frequently associated, and only two police officers to deal with the situation. We think these factors provided a reasonable basis for the officer to conduct the pat-down, which led to the discovery of the drugs and drug paraphernalia. Unlike J.L., this was not a pat-down predicated on nothing more than an anonymous, uncorroborated tip.
For these reasons, we affirm the trial court’s order denying Mr. Leach’s motion to suppress.
AFFIRMED.
GRIFFIN and LAWSON, JJ., concur.

. Section 901.151(5), Florida Statutes (2005), states:
Whenever any law enforcement officer authorized to detain temporarily any person under the provisions of subsection (2) has probable cause to believe that any person whom the officer has temporarily detained, or is about to detain temporarily, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or any other person, the officer may search such person so temporarily detained only to the extent necessary to disclose, and for the purpose of disclosing, the presence of such weapon. If such a search discloses such a weapon or any evidence of a criminal offense it may be seized.

. The validity of the traffic stop and its duration are not at issue here.