FIFTH DISTRICT COURT OF APPEAL
Case No. 5D2024-0947
LT Case No. 2023-CF-000044-A

STATE OF FLORIDA,

    Appellant,

    v.

DEVIN SHAWN DENONCOURT,

    Appellee.

_____

On appeal from the Circuit Court for Citrus County.
Joel D. Fritton, Judge.

Ashley Moody, Attorney General, Tallahassee, and Deborah A. Chance, Assistant Attorney General, Daytona Beach, for Appellant.

Matthew J. Metz, Public Defender, and Zachary L. Wiseman, Assistant Public Defender, Daytona Beach, for Appellee.

December 27, 2024

HARRIS, J.

    The State appeals the trial court's order granting Appellee's, Devin Shawn Denoncourt, motion to suppress evidence seized during a traffic stop. It argues the traffic stop was not unreasonably prolonged, the officer conducted a valid pat-down,

and, based on the totality of the circumstances, the officer properly seized the item found in Appellee's pants. We agree and reverse.

Appellee was charged with trafficking in methamphetamine (count one), possession with the intent to sell/manufacture cocaine (count two), possession of fentanyl (count three), and drug possession (morphine) (count four). He filed a motion to suppress evidence that was seized from his person during a traffic stop after a K9 alerted to the presence of narcotics in the vehicle he was driving. Appellee argued that the traffic stop was unconstitutionally extended because he was only pulled over for a traffic infraction and there was no reasonable suspicion a crime was being committed. He also argued that there was no constitutional justification for the pat-down of his person. He further argued that any manipulation of the bulge the officer observed in the front of Appellee's pants fell outside the plain-feel doctrine, and the continued exploration after concluding that Appellee's pants contained no weapon was unrelated to the sole justification of the search, i.e., the protection of the officer and others.

The court conducted a hearing on the motion and the following evidence was presented. Deputy David Elias is a deputy sheriff, SWAT team member, and K9 officer, and was previously a narcotics patrol deputy. He has been a K9 officer for five years and has conducted "[t]housands" of pat-down searches. He testified that on January 17, 2023, he conducted a traffic stop on Appellee shortly before 4:00 a.m., due to possible improper window tint and deficient taillight on a trailer. When he activated his sirens and lights, the vehicle did not stop right away, but continued driving at a slow rate of speed for a few hundred yards before eventually turning off a street in a residential area and coming to a stop. Appellee was the driver and Cody Brunner was the passenger. Elias had come into contact with Brunner "[l]ots" of times before, including for incidents involving drugs, thefts, and eluding. When he approached the vehicle, he asked the occupants for their drivers' licenses, insurance, and registration, which was Elias's standard procedure for traffic stops. Appellee provided his driver's license and registration, but the registration did not match the tag that was on the vehicle. They also did not have any proof of insurance, but Brunner said "hey, give me a minute, I'll go ahead and contact

2

the registered owner and I'll have him text that over." According to Elias, there was no way to look up the insurance himself, since the tag on the truck did not belong to it.

After Brunner asked for a minute to contact the owner, Elias went back to his patrol vehicle and deployed K9 Odie for a sniff of the vehicle, which took about 40 to 45 seconds. Another officer, Deputy Garrison, was present during the K9 sniff. K9 Odie alerted to the driver side door. At no point during that 40 seconds did Brunner or Appellee indicate they had the insurance ready. Because the driver is supposed to be able to supply proof of insurance within a reasonable amount of time, Elias gave Appellee that opportunity to obtain the proof of insurance, rather than issuing a citation right away.

After K9 Odie alerted, Elias asked Appellee to step out of the vehicle. Appellee did not face Elias when stepping out of the car, which was "very odd," and Appellee was also messing with his pants. Elias told Appellee to stop messing with his hands and told him to turn around, which is when he noticed a bulge in Appellee's pants. According to Elias, the bulge "was 150 percent clearly not of a human body part unless you have just a massive hernia or something going on with you." Elias asked Appellee if he had anything illegal on him, to which Appellee said no, and then asked him to turn back around to conduct a pat-down of his person. In Elias's experience, drugs and weapons are "[v]ery often seen together," and Elias was also concerned about the presence of possible weapons for his safety, which was the reason for the pat-down. He used the palm of his hands and worked his way from Appellee's chest down to the rest of his body, making sure he did not feel any weapons. Elias testified that he felt methamphetamine in Appellee's pants based on the crystal-like shards.

Elias asked Appellee what that bulge was. Appellee then got defensive and pulled up his shirt to show he did not have anything; however, as he did so, Elias observed the corner of a plastic Ziploc bag protruding out of his waistband. Based on Elias' training and experience, "every single time" he finds a bag in an individual's pants or crotch area, "it's never contained anything but drugs." All of the narcotics that were found during the incident came from that

3

bag inside Appellee's pants. Once Elias retrieved the baggie, he immediately detained Appellee and put him in Deputy Garrison's vehicle.

Following the hearing, the court granted Appellee's motion to suppress, finding that the stop itself was permissible, but the K9 walk and sniff "was an unnecessary step added to the stop prior to ever completing the purpose of the stop." The court noted that had the other officer assisted by commencing the citations while Elias commenced a K9 sniff, "the outcome may very well have been different." It also found that, as to Elias's testimony that he felt crystal-like shards during the pat-down, that "simply could not have been detected with the palm of a hand." This appeal followed.

"A motion to suppress presents mixed questions of law and fact." *Brooks v. State*, 363 So. 3d 181, 183 (Fla. 5th DCA 2023) (quoting *Evans v. State*, 989 So. 2d 1219, 1221 (Fla. 5th DCA 2008)). This Court reviews legal conclusions de novo but defers to the trial court's factual findings. *See id.*

We conclude that the trial court erred in granting the motion to suppress because the stop was not unlawfully prolonged, the officer conducted a valid pat-down, and, based on the totality of the circumstances, the officer had authority to seize the item in Appellee's pants.

A traffic stop becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005). A K9 sniff can be conducted during a lawful traffic stop without offending the Fourth Amendment, but it may not prolong the stop, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *State v. Creller*, 386 So. 3d 487, 493 (Fla. 2024) (quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). A sniff search can be conducted before the traffic stop has been concluded, but not after. *See State v. Brown*, 691 So. 2d 637, 638 (Fla. 5th DCA 1997). The critical question is not whether the sniff occurs before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop. *See Rodriguez*, 575 U.S. at 357. "Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355 (quoting *Caballes*, 543 U.S. at 408). These

4

inquiries include checking the driver's license, determining whether there are any warrants against the driver, and inspecting the vehicle's registration and proof of insurance. *See id.* An officer has the right and responsibility, when the driver admits that he is driving a vehicle owned by someone not present, to run the tag number, and "the traffic stop should not be considered completed until such information, if it can be obtained within a reasonable period, is returned." *Brown*, 691 So. 2d at 638.

Here, Deputy Elias asked for the occupants' licenses, registration, and insurance. The occupants requested that Elias give them time to obtain the insurance information, since the vehicle belonged to their friend. Because Elias was waiting on Appellee and the passenger to provide the insurance information, the stop had not yet concluded. The K9 sniff, which took about 40 seconds, occurred during the time the occupants were still attempting to obtain the insurance information, and neither occupant informed Elias they had the information prior to the sniff.[1] Thus, the stop was still in progress. *See State v. Griffin*, 949 So. 2d 309, 311 (Fla. 1st DCA 2007) (finding K9 sniff during traffic stop proper where K9 officer stopped appellee for speeding; about five to ten minutes later, while writing a traffic citation, another officer arrived; the K9 officer stopped writing the citation and walked dog around vehicle; the sniff took between 20 and 90 seconds, and alerted to odor of narcotics; and K9 officer completed writing citation immediately following the walk-around). Accordingly, the K9 sniff was proper because it did not prolong the stop. *See Flowers v. State*, 290 So. 3d 642, 644 (Fla. 1st DCA 2020) (affirming denial of motion to suppress where stop was still in progress when sniff was conducted and officer had not yet written traffic citation).

The officer's request for Appellee to step out of the vehicle was also proper. *See State v. Benjamin*, 229 So. 3d 442, 444 (Fla. 5th DCA 2017) (holding that where defendant was lawfully detained, officer could properly order him to exit vehicle, even if officer did not have particularized basis to believe defendant was a threat to

---

[1] There was also no testimony that they informed Elias they could not get the information prior to the K9 sniff.

his safety); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (holding once motor vehicle has been lawfully detained for traffic violation, officers may order driver to get out of vehicle without violating Fourth Amendment).

As to the pat-down search, under the Florida Stop and Frisk Law, an officer who has validly stopped an individual may search that individual "only if the officer has probable cause to believe that the individual is armed with a dangerous weapon and poses a threat to the officer or any other person." *Dewberry v. State*, 905 So. 2d 963, 966 (Fla. 5th DCA 2005). Probable cause for a stop and frisk requires "an articulable reasonable belief or suspicion that the individual is armed and poses a threat to the officer." *Leach v. State,* 957 So. 2d 717 (Fla. 5th DCA 2007). In determining the reasonableness of an officer's suspicion, trial courts must consider the totality of the circumstances as viewed by an experienced police officer. *See id.* (citing *Dewberry*, 905 So. 2d at 966).

In *Leach*, there was a lawful traffic stop, the K9 alerted to the presence of an odor of narcotics where the defendant was sitting, the occupants of the vehicle appeared uneasy and moved around in an unusual fashion, the officer's experience taught him that weapons and drugs were frequently associated, and there were only two police officers to deal with the situation. 957 So. 2d at 721–22. This Court held that based on these factors, there was a reasonable basis for the officer to conduct the pat-down, which led to the discovery of drugs and paraphernalia. *Id.* at 722.

The facts of the instant case are similar to those in *Leach*. Here, Deputy Elias stopped Appellee's vehicle in the early morning hours shortly before 4:00 a.m.; the vehicle did not stop right away despite having multiple opportunities to do so; the vehicle belonged to someone else; the K9 alerted to the presence of the odor of narcotics on the vehicle; in Elias's experience, weapons are found with drugs eight out of ten times; when Appellee exited the vehicle, he faced away from Elias and was moving his hands furtively around his waistband; and when Appellee turned to face Elias, Elias noticed a bulge in Appellee's pants. Considering the totality of the circumstances, Elias had a reasonable suspicion that Appellee posed a threat to his safety.

6

The trial court took issue with Elias's testimony that he pats down every driver that exits a vehicle; however, Elias also testified that he was concerned about the presence of a weapon, especially because weapons are often found with drugs, which the K9 alerted to, and the way Appellee exited the vehicle was unusual.[2] *Cf. Santiago v. State*, 84 So. 3d 455, 458 (Fla. 4th DCA 2012) (holding although there was testimony regarding a bulge in defendant's pants and defendant's "scared" demeanor, officer did not provide testimony that he had a suspicion or feared defendant was armed with a dangerous weapon). Additionally, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Accordingly, we conclude that the pat-down was proper.

Finally, we look at the search of Appellee's person. A stop and frisk may not extend beyond a pat-down of a suspect's outer clothing unless the officer concludes the suspect has a weapon. *See Santiago*, 84 So. 3d at 459. Before retrieving contraband from a suspect's person during a pat-down, an officer must have probable cause to believe that the item felt during the pat-down is contraband. *See State v. J.D.*, 796 So. 2d 1217, 1219 (Fla. 4th DCA 2001). Probable cause to search a suspect exists when the totality of the facts and circumstances within an officer's knowledge sufficiently warrant a reasonable person to believe that, more likely than not, a crime has been committed. *See Santiago*, 84 So. 3d at 459. Probable cause does not develop anytime an officer feels an object he reasonably suspects to be contraband; rather, the officer must be reasonably certain the object is contraband. *See Harris v. State*, 790 So. 2d 1246, 1249 (Fla. 5th DCA 2001). The burden is on the State to prove that the officer had probable cause to seize items felt during a frisk for weapons. *See J.D.*, 796 So. 2d at 1219. It must present more than the subjective statement of a

---

[2] The trial court made no finding as to Elias's credibility regarding his overall testimony, other than the specific testimony that he could feel, with just the palm of his hand, the crystal-like meth through the multiple layers of clothing.

police officer that he had a feeling based on experience that the seized item was contraband. *See id.*

As an initial matter, the trial court did not believe that Elias detected, with just the palm of his hand, the crystal-like methamphetamine through three layers of clothing and multiple plastic bags. Because this Court defers to the trial court's factual findings on that matter, the issue is whether, disregarding Elias's testimony that he immediately identified the feeling of meth through the clothing, he still had probable cause to search Appellee's person based on the totality of circumstances. In addition to those circumstances we found to authorize the pat-down search, we also note that Appellee made furtive movements towards his waistband, which, in Elias's experience, appeared to be an attempt to conceal something; when Appellee voluntarily lifted his shirt up, Elias observed the corner of a plastic baggie; and in Elias's experience and training as a narcotics patrol deputy, K9 Officer, and SWAT team member, during which he has conducted "[t]housands" of pat-down searches, anytime he has found a bag in someone's pants or crotch, it one hundred percent of the time contained drugs.

Based on these circumstances, we find that Elias had probable cause to search Appellee's person, which led to the discovery of the drugs from which the charges stemmed. *See Santiago*, 84 So. 3d at 459 (providing officer does not need to "know" item is contraband, and finding of probable cause does not require absolute certitude, but rather, totality of circumstances allows reasonable officer to believe, more likely than not, a crime has been committed); *Doctor v. State*, 596 So. 2d 442, 445 (Fla. 1992) (finding totality of circumstances gave officer probable cause to believe defendant was carrying crack cocaine in groin area because defendant exited vehicle in suspicious manner, officers observed large bulge which defendant attempted to hide, and officer had knowledge through experience with unique texture of crack cocaine and this type of concealment).

Accordingly, the trial court erred in granting Appellee's motion to suppress. We reverse and remand for further proceedings.

REVERSED and REMANDED.


EDWARDS, C.J., and WALLIS, J., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

9