959 So.2d 360 (2007)
Michael LASSITER, Appellant,
v.
STATE of Florida, Appellee.
No. 5D06-2794.
District Court of Appeal of Florida, Fifth District.
June 8, 2007.
*361 James S. Purdy, Public Defender, Michael S. Becker and Edward J. Weiss, Assistant Public Defenders, Daytona Beach, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Kristen L. Davenport, Assistant Attorney General, Daytona Beach, for Appellee.
MONACO, J.
The appellant, Michael Lassiter, seeks review of the denial by the trial court of his motion to suppress in connection with his conviction of trafficking in MDMA. Because the search executed pursuant to a valid search warrant was reasonable, and, in any event, the involved law enforcement officers had probable cause to stop Mr. Lassiter in his car and to search the vehicle, we affirm.
Based on information received from a confidential informant, Mr. Lassiter's daughter, law enforcement authorities began an investigation into a suspected MDMA manufacturing and distributing operation. The informant, who had earlier been arrested for a drug violation, discussed in detail her father's operation with the police. With her full cooperation the police thereafter monitored numerous telephone conversations between Mr. Lassiter and his daughter. The investigating officers learned from the informant and from the monitored calls that Mr. Lassiter would receive packages of chemicals necessary for the production of MDMA at his home in Daytona Beach, and would transport these items to a house in Palm Coast.
Surveillance confirmed the receipt of the chemicals by Mr. Lassiter, his transportation of them to Palm Coast, and the distribution of the MDMA pills in connection with this operation. In the intervening time period Mr. Lassiter was observed at the Palm Coast house on numerous occasions driving a black Camaro automobile registered to his wife. In addition, the police had observed the informant paying Mr. Lassiter $1,000 in cash for previously received MDMA. The investigating officers also conducted a trash pull from the Palm Coast house and discovered marijuana, a ledger and other documentation, and a plastic bottle containing a corrosive material. Finally, the police learned that Mr. Lassiter was on probation during this time period as a result of a prior narcotics violation.
*362 Mr. Lassiter advised his daughter that the newly manufactured pills would be ready for distribution on a particular date. His daughter was to purchase 200 of the pills from her father in Daytona Beach. On that same day, the Florida Department of Law Enforcement secured a warrant authorizing a search of the premises in Palm Coast, as well as "the yard and curtilage thereof and any vehicles parked thereon, and any person on the Premises reasonably believed to be engaged in or connected with the illegal activity." (Emphasis added). The investigation was thoroughly described in the affidavit for the search warrant.
According to the testimony adduced, a law enforcement operational briefing followed the issuance of the search warrant, during which the police agencies involved discussed precautions to be taken while executing the warrant. Some officers went to the residence to begin surveillance and were maintaining radio contact with other officers. The black Camaro was already at the residence when the surveillance team arrived. At 2:45 p.m. that same day, Mr. Lassiter called his daughter and told her the pills she had previously ordered were ready for delivery. This information was relayed to the police within fifteen minutes. Because of the volatile nature of the chemicals involved in the production of MDMA, the law enforcement agencies elected not to storm the residence in order to execute the warrant. Rather, the officers chose to wait for persons already in the house to exit because they wanted the house to be empty before trying to enter.
The police officers observed Mr. Lassiter exit the Palm Coast house, walk to the black Camaro that was on the premises, lift and close the hood of the automobile, and then drive away. Because the authorities did not want to alert anyone still in the house of their impending execution of the warrant, and in order not to jeopardize the safety of either persons in the residence or the police officers involved in executing the warrant, they decided to wait until Mr. Lassiter drove a safe distance away before making a stop.
Mr. Lassiter was stopped about five miles away from the Palm Coast house, and was immediately advised of his Miranda rights. Shortly thereafter a police dog alerted to the front and back of the vehicle. At that point Mr. Lassiter told the officers that there were drugs under the hood of his car. He then became very cooperative in discussing his involvement with the manufacturing of the MDMA.
Mr. Lassiter filed a motion to suppress "all physical evidence gathered from his detention," including the package of MDMA pills found underneath the hood of his car, and "any and all statements made to law enforcement following his detention and arrest." He argued that even if the State had the authority to search the Palm Coast house, the State did not have sufficient corroborating evidence creating a reasonable suspicion allowing the authorities to stop Mr. Lassiter when he was miles away from the residence.
At the suppression hearing an officer who had been a narcotics investigator for many years explained that homemade drugs in general, and MDMA pills in particular, are made with various unstable chemicals, Bunsen burners, and sterilized equipment in clandestine labs, and that there is a significant volume of volatile fumes and flammable equipment associated with the process. Fumes from the process of making MDMA in a non-professional, residential setting could, according to the officer, "unite and cause explosions." In view of this danger, and because in the past people have been hurt or killed by explosions at clandestine labs, officers who *363 execute warrants on clandestine labs are, in fact, often given special training in that regard.
The testimony further indicated that if police officers storm a structure being used in the clandestine manufacture of MDMA and other drugs in order to execute a warrant, there is a great concern that people inside may knock over some volatile substance in the commotion and accidentally spark an explosion. Though the search warrant in the present case did not expressly give permission to conduct a traffic stop and did not mention "trafficking" of narcotics, the officer believed they had probable cause for the stop and search because they had evidence that Mr. Lassiter was involved in the manufacture of MDMA at a clandestine lab and that he was planning to make a narcotics transaction with his daughter.
Another officer testified that they allowed Mr. Lassiter to get five miles from the lab before stopping him so they could ensure that other people involved with the lab would not see the police activity. Additionally, the police needed some time to allow for communication and coordination among the officers conducting the stop.
The trial court, finding that probable cause existed under the totality of circumstances, denied Mr. Lassiter's motion to suppress. The court found in addition that from "the body of the search warrant affidavit, monitored phone calls, various trash pulls, the training and experience of law enforcement involved, and surveillance of the defendant," law enforcement had sufficient facts to arrest Mr. Lassiter and to search the car. The court found, as well, that the confidential informant had a "special insight and credibility" based on evidence that she had previously supplied information to police officers in another county, and because she and Mr. Lassiter had a close, loving relationship. Finally, the court found that any statements made to the police after Mr. Lassiter was stopped were given freely and voluntarily after Mr. Lassiter had been read his Miranda rights. Before entering a no contest plea, Mr. Lassiter reserved the right to appeal the trial court's decision on the motion to suppress.
Because a motion to suppress involves mixed questions of law and fact, we use a compound standard of review. We first review the decision of the trial court to grant or deny such a motion to determine whether there is competent substantial evidence to support the factual findings. See Dewberry v. State, 905 So.2d 963, 965 (Fla. 5th DCA 2005). In doing so, we construe all evidence and reasonable inferences to be drawn from the evidence with a view to upholding the trial court's determination. Id. at 965. We then apply a de novo standard of review to the application of the trial court of its conclusions of law to the facts. Id.
Mr. Lassiter first asserts that the search warrant did not authorize the stopping and search of his vehicle at some point away from the house and grounds described in the warrant. He points out that the Camaro he was driving was not specifically described in the warrant and was not located within the curtilage of the Palm Coast house when it was searched. He next posits that the police did not have either a reasonable suspicion or probable cause to stop and search his car, irrespective of the warrant. We disagree with both positions.
First, we think the warrant was properly executed. A number of prior decisions are instructive in this regard. In Terhune v. State, 470 So.2d 840 (Fla. 2d DCA 1985), for example, the police obtained a warrant to search a residence and the persons inside for evidence of cocaine *364 distribution. The house was believed to have weapons within it, and was located near a school that was about to dismiss its students for the day. As a result, the police delayed implementing the search warrant. In the interim, a police officer, posing as a taxi driver, picked up the appellant at the house. A patrol car stopped the cab two blocks from the residence, searched the appellant, and found cocaine in his possession. The appellant filed a motion to suppress, arguing that the police could not execute the warrant on him after he left the curtilage of the house. The Second District concluded, however, that the facts presented sufficient exigent circumstances for the execution of the warrant away from the home. Because the police action was patently reasonable, the evidence seized was not subject to the exclusionary rule. See also Crain v. State, 914 So.2d 1015, 1023 (Fla. 5th DCA 2005), review denied, 940 So.2d 427 (Fla.2006); State v. Hendrix, 855 So.2d 662 (Fla. 1st DCA 2003).
Similarly, in State v. Freeman, 673 So.2d 139 (Fla. 5th DCA 1996), Mr. Freeman drove onto the driveway of a residence that was being searched by law enforcement officials pursuant to a warrant. He attempted to back out of the driveway, but was detained by the police, who then searched his vehicle and found cocaine, marijuana and a gun. The warrant that had been issued authorized the search of the house and any vehicle within the curtilage. Mr. Freeman's vehicle had been seen at the residence by the police during a controlled buy of drugs. This court held that under those circumstances, the search was lawful. In addition, we held that no nexus is required between any vehicle found on the premises and the alleged illegal activity when the warrant authorizes the police to search any vehicle within the curtilage of the premises. Id. at 141.
The warrant in the present case authorized law enforcement to search the Palm Coast house as well as the "yard and curtilage thereof and any vehicles parked thereon." It does not seem to be disputed that the warrant could have been executed while Mr. Lassiter was physically located in the Palm Coast house, and that the Camaro could have been searched pursuant to the warrant while it was parked for a number of hours in the driveway associated with that house. Given the volatile nature of the drug being manufactured at the residence, we find it both prudent and reasonable for the police to have waited for Mr. Lassiter to leave in the car from the location described in the warrant before executing the warrant. In coming to this conclusion, however, we underscore that this off premises search is permissible because of the peculiar and dangerous nature of the product involved, as well as the reasonable time and distance that elapsed before the search occurred.
Beyond the warrant, we conclude as well that the police had probable cause to arrest Mr. Lassiter based on the informant's information and the other evidence arising out of the police surveillance and other investigative activities. Probable cause is defined as "a reasonable ground of suspicion supported by circumstances sufficiently strong to warrant a cautious person in the belief that the person is guilty of the offense charged." See Schmitt v. State, 590 So.2d 404, 409 (Fla.1991), cert. denied, 503 U.S. 964, 112 S.Ct. 1572, 118 L.Ed.2d 216 (Fla.1992). See also Simmons v. State, 934 So.2d 1100 (Fla.2006), cert. denied, ___ U.S. ___, 127 S.Ct. 1334, 167 L.Ed.2d 80 (Fla.2007); Bell v. State, 944 So.2d 448 (Fla. 5th DCA 2006), review dismissed, ___ So.2d ___ (Fla. Feb. 22, 2007).
Here, the police had reliable information from Mr. Lassiter's daughter, corroborated *365 by surveillance of his home and the Palm Coast house, monitored telephone calls, and a trash pull, reasonably demonstrating that Mr. Lassiter was involved in the manufacture and sale of MDMA. After they stopped Mr. Lassiter, a police dog was brought to the scene and alerted to the presence of drugs in the vehicle. A cautious person would certainly believe under these circumstances that there was probable cause to arrest him.
Accordingly, we affirm.
AFFIRMED.
ORFINGER and EVANDER, JJ., concur.